# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# WESTERN DIVISION

**LORENZA BARNETTE,**           CASE NO. 3:23 CV 1303

    Plaintiff,

    v.                               JUDGE JAMES R. KNEPP II

**LT. KENNEDY,**

    Defendant.                       **MEMORANDUM OPINION AND ORDER**

## INTRODUCTION

Currently pending before the Court in this prisoner 42 U.S.C. § 1983 action alleging deliberate indifference are *pro se* Plaintiff Lorenza Barnette and Defendant Lt. Kennedy's cross-motions for summary judgment. (Docs. 18, 19). The matter is fully briefed and decisional. Jurisdiction is proper under 28 U.S.C. § 1331. For the reasons discussed below, the Court grants Defendant's motion for summary judgment and denies Plaintiff's motion for summary judgment.

## BACKGROUND

In his Verified Complaint,[1] Plaintiff states that on March 24, 2023, sometime after 9:00 p.m., Officer Pettey used oleoresin capsicum ("O/C") spray in the dorm where he resides at Marion Correctional Institution (Doc. 1, at 6); this stemmed from an incident not involving Plaintiff (Doc. 18-1, at ¶ 5). Plaintiff was in the restroom at the time, where he "suddenly started gagging, coughing, and eventually started coughing up blood because his throat was raw from

---

1. Plaintiff's Complaint is verified. *See* Doc. 1, at 13. "[A] verified complaint . . . satisfies the burden of the nonmovant to respond" to a motion for summary judgment, unlike "mere allegations or denials" in unverified pleadings. *Thaddeus-X v. Blatter*, 175 F.3d 378, 385 (6th Cir. 1999) (en banc); *see also El Bey v. Roop*, 530 F.3d 407, 414 (6th Cir. 2008) (a "verified complaint . . . carries the same weight as would an affidavit for the purposes of summary judgment").

the OC Chemical spray." (Doc. 1, at 6) Plaintiff informed Second Shift Officer Connolly of his symptoms; Connolly told him medical was on its way for an inmate having a seizure. *Id.* After the nurse attended to that inmate, Plaintiff told the nurse about his symptoms; she told him to have an Officer call medical. *Id.* at 7.

Shortly thereafter, Plaintiff stopped Defendant "and told him that he was 'coughing up blood,' his 'face felt like it is on fire,' . . . that he was 'lightheaded' [and that] '[he] need[ed] to go to medical.'" *Id.* He tried to show Defendant the blood he was coughing up, but Defendant would not go with him. *Id.* He then asked Defendant, "what about my face[,] it feel[s] like its burning?" *Id.* at 8. Defendant told Plaintiff "everyone is not going to go to medical" and left the dorm. *Id.* The following day, Plaintiff states his face started to peel and develop rashes. *Id.*

In an Affidavit, Defendant states Plaintiff approached him and stated he needed medical assistance. (Doc. 18-1, at ¶ 8). He further avers he "did not observe [Plaintiff] in any distress, nor did [he] observe any blood, nor did [Plaintiff] have issues breathing or walking." *Id.* Defendant states that because Plaintiff "was not in immediate distress, [Defendant] advised [Plaintiff] he could see[k] medical assistance during the daily sick call, which was to take place the following day." *Id.* at ¶ 9. Thereafter, Defendant left Plaintiff's dorm; he is "unaware of any further medical assistance sought by [Plaintiff]." *Id.* at ¶ 10.

The following day – March 25, 2023 – Plaintiff asked a different officer for a medical slip. (Doc. 1, at 8). The officer called medical; after getting off the phone, the officer told Plaintiff just to fill out the medical slip. *Id.* One day later (March 26), Plaintiff saw a nurse during sick call. *Id.* The nurse issued Plaintiff medication, explained "why he was coughing up blood," and sent him to the Commissary to purchase cough drops to relieve his throat soreness. *Id.* Medical records from this visit show Plaintiff had "0 rashes noted/reported" and that he

2

denied chest pain and shortness of breath. (Doc. 18-2, at 5). He reported coughing with "blood tinged spit[.]" *Id.*

On March 28, Plaintiff saw Dr. Singhal. *Id.* She prescribed Plaintiff hydrocortisone cream for his rash/blisters and irritation; she also ordered an x-ray. (Doc. 1, at 9). Dr. Singhal told Plaintiff it looked like he had an allergic reaction to the O/C spray. *Id.*; *see also* Doc. 18-2, at 8–10 (Dr. Singhal medical record). Medical records state Plaintiff reported itching and redness/rash, a blood-tinged sputum "which ha[d] since resolved[,]" and a break out on his skin "which has since resolved". (Doc 18-2, at 8). Plaintiff reported using over-the-counter cough drops improved his symptoms. *Id.*

On March 29, Plaintiff underwent a chest x-ray ordered by Dr. Singhal. (Doc. 1, at 9); (Doc. 18-2, at 10). Dr. Singhal did not tell Plaintiff the result. (Doc. 1, at 9). The medical records indicate the x-ray was "negative" and showed "nothing unusual." (Doc. 18-2, at 11).

Plaintiff brought this case asserting Defendant "denied and delayed Plaintiff's access to treatment from OC exposure after Plaintiff made Defendant aware that he needed medical attention for his serious medical needs[.]" (Doc. 1, at 10).

## STANDARD OF REVIEW

Summary judgment is appropriate where there is "no genuine dispute as to any material fact" and "the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When considering a motion for summary judgment, the Court must draw all inferences from the record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court is not permitted to weigh the evidence or determine the truth of any matter in dispute; rather, the Court determines only whether the case contains sufficient evidence from which a jury could reasonably find for the nonmoving party. *Anderson*

3

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). The moving party bears the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

This burden "may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Id.* The nonmoving party must go beyond the pleadings and "present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Anderson*, 477 U.S. at 257. Further, the nonmoving party has an affirmative duty to direct the Court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact. *See* Fed R. Civ. P. 56(c)(3) (noting the court "need consider only the cited materials").

## DISCUSSION

Defendant argues he is entitled to summary judgment because, first, Plaintiff cannot create an issue of material fact regarding either the objective or subjective prong of an Eighth Amendment deliberate indifference claim; and, second, because he is entitled to qualified immunity. *See* Doc. 18. Plaintiff, by contrast, contends the Court should grant summary judgment in his favor because he can prove both prongs of a deliberate indifference claim and Defendant is not entitled to qualified immunity. *See* Doc. 19. For the reasons set forth below, the Court finds Defendant is entitled to summary judgment on Plaintiff's claim.

<u>Preliminary Considerations</u>

The Court pauses at the outset to address several side disputes between the parties.

First, Defendant contends Plaintiff's Motion for Summary Judgment was not filed by the deadline and should therefore not be considered by the Court. The deadline for dispositive motions was July 12, 2024. Plaintiff filed his motion (which is combined with his opposition to

4

Defendant's motion) on July 26, 2024.² As Defendant points out, Plaintiff did not request and receive leave for additional time to file his motion. Although Plaintiff asserts he did not receive Defendant's motion for summary judgment until two weeks after it was filed, this does not provide an excuse for the untimely filing of his own motion for summary judgment. Nevertheless, as Plaintiff's motion is combined with his opposition arguments, the Court has considered Plaintiff's entire filing and, as set forth below, finds he is not entitled to summary judgment in his favor.

Second, Plaintiff contends the materials supporting Defendant's motion for summary judgment should be disregarded. Specifically, he contends the Affidavits attached to Defendant's motion are dated after the discovery deadline and are therefore invalid. As Defendant points out, this is incorrect. The discovery period is the period during which the parties may request discovery from one another. Plaintiff also contends Defendant failed to comply with Federal Civil Rule 26. Because Plaintiff cites the rule generally, the Court is not clear which section of the rule Plaintiff contends was violated. To the extent Plaintiff asserts Defendant failed to comply with the initial disclosure requirement, this case is exempt from such requirement. *See* Fed. R. Civ. P. 26(a)(1)(B)(iv); *see also* Doc. 14, at 2. To the extent Plaintiff contends Defendant failed to comply with the pretrial disclosures section of the rule, this rule applies only to trial evidence. *See* Fed. R. Civ. P. 26(a)(3). Plaintiff does not assert he requested anything specific from Defendant that not produced during the discovery period. The Court finds Plaintiff has not identified a violation of Rule 26 and the evidence Defendant relies upon is properly presented.

---

2. The Court received Plaintiff's filing on August 5, 2024, but Plaintiff represents he sent it on July 26, 2024, so by operation of the prison mailbox rule the latter is the filing date. *In re Prison Litig. Reform Act*, 105 F.3d 1131, 1132 (6th Cir. 1997) (a *pro se* prisoner's pleading "is deemed filed when the inmate gives the document to prison officials to be mailed.") (citing *Houston v. Lack*, 487 U.S. 266, 270 (1988)).

Third, in response to Defendant's qualified immunity argument, Plaintiff argues Defendant's admission that he has a disciplinary record should "be consider[ed] by this Court [in] weighing the credibility of Defendant's Affidavit." (Doc. 19, at 10) (citing Doc. 20-2, at 6–7). But the Court "may not make credibility determinations nor weigh the evidence" in its analysis of a summary judgment motion. *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014). Instead, in viewing Defendant's motion for summary judgment, the Court is to view the facts in the light most favorable to Plaintiff. That is, to the extent there is a factual conflict, the Court takes the view most favorable to Plaintiff. Plaintiff also alleges Defendant's description of the incident in his affidavit conflicts with what he told an investigator. (Doc. 19, at 6). Specifically, he contends the internal prison records do not contain the statement in Defendant's Affidavit that he "advised Plaintiff 'he could see medical assistance during the daily sick call, which was to take place the following day.'" *Id.* (citing Doc. 18-1, at ¶ 9). But the prison grievance records Plaintiff submits do not contradict Kennedy's affidavit. *See* Doc. 20-1, at 4.

<u>Deliberate Indifference</u>

A prison official may not be held liable under the Eighth Amendment for failing to provide adequate assistance for an inmate's serious medical need unless the inmate can show the prison official acted with "deliberate indifference." *Rhinehart v. Scutt*, 894 F.3d 721, 737 (6th Cir. 2018) (citing *Estelle v. Gamble*, 429 U.S. 97, 105 (1976)). To prove deliberate indifference, a prisoner must point to evidence that "the official knows of and disregards an excessive risk to inmate health or safety[.]" *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Such deliberate indifference to an inmate's medical needs constitutes cruel and unusual punishment under the Eighth Amendment. *Rhinehart*, 894 F.3d at 736–37.

6

A deliberate indifference claim has two parts: (1) "an objective component—a 'sufficiently serious medical need[;]'" and (2) "a subjective component—a 'sufficiently culpable state of mind.'" *Griffith v. Franklin Cnty.*, 975 F.3d 554, 567 (6th Cir. 2020) (quoting *Blackmore v. Kalamazoo County*, 390 F.3d 890, 895 (6th Cir. 2004)). To succeed on an Eighth Amendment claim, a plaintiff must present sufficient evidence to show a genuine dispute of material fact on both prongs of the inquiry. *See Griffith*, 975 F.3d at 567–68.

*Objective Component*

An objectively serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Blackmore*, 390 F.3d at 897 (cleaned up). When Plaintiff alleges harm due to a delay in treatment, or the injury is "seemingly minor or non-obvious[,] . . . medical proof is necessary to assess whether the delay caused a serious medical injury." *Id.* at 898; *see also Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) ("[A]n inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed.") (citation omitted) (abrogated on other grounds).

Taking the facts here in the light most favorable to Plaintiff, his face felt like it was burning, he was coughing up blood, and he felt lightheaded when he approached Defendant. Many courts have found these, or other similar, temporary effects of pepper spray do not rise to the level of a sufficiently serious medical need to satisfy the objective component of a deliberate indifference claim. *See, e.g.*, *Jenkins v. Dahlby*, 2022 WL 18636603, at *10 (N.D. Ohio), *report and recommendation adopted*, 2023 WL 141954 (collecting cases) ("The effects of pepper spray, standing alone, typically fails to indicate an objective, 'sufficiently serious' medical need giving

7

rise to constitutionally-mandated medical treatment where the inmate has access to soap and water to decontaminate."); *Peterson v. Desrochers*, 2021 WL 2593555, at *6 (W.D. Mich.), *report and recommendation adopted*, 2021 WL 2592558 (W.D. Mich.) ("A claim of burning skin resulting from the use of a chemical agent, without more, is insufficient to satisfy the objective component of an Eighth Amendment claim."); *Rodriguez v. Cohall*, 2022 WL 1228411, at *4 (S.D.N.Y.) (collecting cases holding symptoms such as breathing difficulty, chest pain, dizziness, anxiety, skin burning/irritation, temporary vision loss, and discomfort do not rise to the level of a "sufficiently serious" medical need); *White v. Williams*, 2016 WL 1237712, at *11 (N.D.N.Y) (finding injuries to an inmate's eye and ribs, coughing and spitting up blood, and lingering chest pain "not to constitute serious medical needs as a matter of law"). This Court agrees and finds Plaintiff has not established his condition was "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Blackmore*, 390 F.3d at 897 (citation omitted).

Moreover, to the extent Plaintiff brings a claim based on the delay in providing medical care, he has not submitted medical proof to show the "delay caused a serious medical injury." *Id.* at 898. Indeed, the only medical evidence of record shows Plaintiff's condition had resolved within a matter of days, and an x-ray was negative. *See* Doc. 18-2.

Thus, the Court finds Plaintiff has not created an issue of fact regarding the objective prong of a deliberate indifference claim. However, even if he had, as discussed below, his claim would still fail on the subjective prong.

*Subjective Component*

With respect to the subjective prong, a prison official cannot be held liable "under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official

8

knows of and disregards an excessive risk to inmate health or safety[.]" *Farmer*, 511 U.S. at 837. To satisfy this component, a plaintiff must show a defendant acted or failed to act with a mental state "equivalent to criminal recklessness." *Santiago v. Ringle*, 734 F.3d 585, 591 (6th Cir. 2013). Criminal recklessness "must involve more than ordinary lack of due care for the prisoner's interests or safety." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause[.]" *Id*. The official's "state of mind must evince 'deliberateness tantamount to intent to punish.'" *Miller v. Calhoun Cnty.*, 408 F.3d 803, 813 (6th Cir. 2005) (quoting *Horn v. Madison Cnty. Fiscal Ct.*, 22 F.3d 653, 660 (6th Cir. 1994)).

Under *Farmer*, a plaintiff must demonstrate the defendant was "both . . . aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and . . . also dr[ew] the inference." 511 U.S. at 837. This inquiry can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *id.* at 835. But "[k]nowledge of the asserted serious needs or of circumstances clearly indicating the existence of such needs, is essential to a finding of deliberate indifference." *Reilly v. Vadlamudi*, 680 F.3d 617, 624 (6th Cir. 2012) (quoting *Blackmore*, 390 F.3d at 896).

Viewing the facts in the light most favorable to Plaintiff here, Plaintiff told Defendant "he was 'coughing up blood,' his 'face felt like it [was] on fire,' . . . that he was 'lightheaded,' [and that] '[he] need[ed] to go to medical.'" (Doc. 1, at 7). Defendant acknowledges Plaintiff requested medical assistance, but states he did not observe Plaintiff to be in distress, did not observe any blood, nor did he observe Plaintiff was having any issues breathing or walking. (Doc. 18-1, at ¶ 8). Due to this lack of observation of "immediate distress[,]" Defendant avers he told Plaintiff he could seek medical assistance during sick call the following day. *Id.* at ¶ 9.

Again, Plaintiff must demonstrate Defendant was "both . . . aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and . . . also dr[ew] the inference." 511 U.S. at 837. "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause[.]" *Whitley*, 475 U.S. at 319. Defendant's "state of mind must evince 'deliberateness tantamount to intent to punish.'" *Miller*, 408 F.3d at 813 (quoting *Horn*, 22 F.3d at 660). Even taking as true Plaintiff's assertion that he had an allergic reaction or was particularly susceptible to exposure to O/C spray, he offers no evidence Defendant knew of this susceptibility or that he subjectively perceived Plaintiff was experiencing a more severe than typical reaction to O/C spray. That is, the Court finds Plaintiff has not demonstrated a question of material fact regarding whether Defendant subjectively "drew the inference" that a substantial risk of harm existed. As such, Defendant is entitled to summary judgment.

*Qualified Immunity*

The qualified doctrine protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

Qualified immunity is an affirmative defense; once a defendant raises it, the burden shifts to the plaintiff to demonstrate: (1) the defendant's acts violated a constitutional right, and (2) the right at issue was clearly established at the time of the defendant's alleged misconduct. *T.S. v.*

*Doe*, 742 F.3d 632, 635 (6th Cir. 2014). A "clearly established right[,]" for the purpose of determining whether a public official is entitled to qualified immunity, "is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (quoting *Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012)).

As set forth above, the Court finds Plaintiff has not established a genuine issue of material fact regarding whether Plaintiff's constitutional rights were violated. As such, Defendant has established his entitlement to qualified immunity.

## Conclusion

For the foregoing reasons, good cause appearing, it is

ORDERED that Defendant's Motion for Summary Judgment (Doc. 18) be, and the same hereby is, GRANTED, and it is

FURTHER ORDERED that Plaintiff's Motion for Summary Judgment (Doc. 19), be and the same hereby is, DENIED.

        *s/ James R. Knepp II*
        UNITED STATES DISTRICT JUDGE

Dated: December 2, 2024